1   Exhibit No. 8; is that correct?
2       A.  Yes, sir.
3       Q.  Based on that, is it fair to say that you did not
4   have any discussions with Mr. Murphy about alleged
5   sexual harassment?
6       A.  Yes, sir.
7       Q.  Was your next complaint about alleged sexual
8   harassment at Wal-Mart when you complained and your
9   complaint resulted in a red book investigation?
10      A.  Yes, sir.
11      Q.  Those are the only times that you complained to
12  any Wal-Mart manager or supervisor about alleged sexual
13  harassment, the complaint that is set forth in Defense
14  Exhibit No. 8, and when you complained and the red book
15  investigation commenced, correct?
16      A.  Yes, sir.
17      Q.  Do you remember when you complained and your
18  complaint resulted in the red book investigation?
19      A.  I talked to Paula Stover concerning Rockwall, and
20  I didn't hear anything back until I was working at 2996.
21      Q.  Which was how much longer after you complained?
22      A.  I believe it was a few months after that.
23              MR. FORMAN:  Steve, is it possible to get a
24  copy of this or copies run for you and one for the court
25  reporter?

Esquire Deposition Services            1700 Pacific Avenue, Suite 4750            Dallas, Texas 75201
Phone (214) 257-1436                          (800) 852-9737                       Fax (214) 965-9205

App. 0011

```
 1                MR. CLARK:  Sure.
 2                (A break was taken from 1:46 p.m. to
 3         1:51 p.m.)
 4                MR. FORMAN:  Go ahead and mark this Defense
 5    9, please.
 6                (Defense Exhibit No. 9 marked.)
 7       Q.  (BY MR. FORMAN) I'm going to go ahead and show
 8    you what's been marked as Defense Exhibit No. 9 for
 9    identification.  I'll ask you to take a look at it and
10    tell me if you recognize it.
11       A.  Yes (witness reviews document).
12       Q.  What is it?
13       A.  It's a statement I made during the red book
14    investigation.
15       Q.  Is it your handwriting on all these pages?
16       A.  Yes, sir.
17       Q.  On the last page of the document where
18    associate's name is printed, are you the person that
19    printed your name?
20       A.  Yes.
21       Q.  And is that your signature where it says
22    associate's signature?
23       A.  Yes.
24       Q.  And you understood by signing this that you were
25    stating that the information submitted in the report is
```

Esquire Deposition Services          1700 Pacific Avenue, Suite 4750          Dallas, Texas 75201
Phone (214) 257-1436                       (800) 852-9737                     Fax (214) 965-9205

App. 0012

1  told a manager or an hourly supervisor about the
2  incidents you will describe in this statement?
3      A.  It's the first time I talked to Aaron Cater.
4      Q.  Where does it limit that in that question?
5      A.  He's a manager.  He's a district manager.
6      Q.  Okay.  Is he an hourly supervisor?
7      A.  No.
8      Q.  Okay.  That question asked you, is this the first
9  time you have told the manager or an hourly supervisor
10 about the incidents you will describe in this statement,
11 and it's your testimony to the jury that you understood
12 that to mean or to question as to whether this was the
13 first time you discussed these incidents with Alan
14 Cater; is that correct?
15     A.  Aaron Cater.
16     Q.  Okay.
17     A.  First time I discussed it with him.
18     Q.  That's how you interpreted that statement?
19     A.  Yes.
20     Q.  According to you, the first complaint that you
21 made was to Mr. Murphy?
22     A.  Yes.
23     Q.  And that complaint to Mr. Murphy is limited to
24 what you wrote in Defense Exhibit No. 8, right?
25     A.  Yes.

Esquire Deposition Services            1700 Pacific Avenue, Suite 4750        Dallas, Texas 75201
Phone (214) 257-1436                        (800) 852-9737                    Fax (214) 965-9205

App. 0013

Page 78

1    A.   I had quite a bit going on at that time.
2    Q.   Now, your statement to Mr. Murphy that's been
3  marked as Defense Exhibit No. 8, was prepared on May
4  5th, 2004, correct?
5    A.   Yes, sir.
6    Q.   And you told us that this was the first -- what
7  you called the complaint of alleged sexual harassment,
8  that you logged with any manager or supervisor at
9  Wal-Mart, correct?
10   A.   Yes, sir.
11   Q.   And you told us that the sexual harassment at
12  Wal-Mart stopped on May -- strike that.
13            And you told us that the sexual harassment
14  at Wal-Mart stopped on or before May 4th, 2004, correct?
15   A.   Yes, sir.
16   Q.   And so it is true that at no time after you
17  complained of alleged sexual harassment at Wal-Mart were
18  you, in fact, sexually harassed, correct?
19   A.   When I left the store.
20   Q.   What's been marked as Defense Exhibit No. 8 is
21  your first complaint of sexual harassment to a Wal-Mart
22  manager or supervisor, correct?
23   A.   Yes.
24   Q.   And you've already told us that this statement
25  was prepared after the alleged sexual harassment had

Esquire Deposition Services          1700 Pacific Avenue, Suite 4750          Dallas, Texas 75201
Phone (214) 257-1436                      (800) 852-9737                     Fax (214) 965-9205

App. 0014

1  stopped, correct?
2     A.  Yes.
3     Q.  And so it is true that from the time you
4  complained to a Wal-Mart manager or supervisor about the
5  alleged sexual harassment and thereafter, you were not
6  sexually harassed, correct?
7     A.  No, that isn't correct.
8     Q.  Okay.  You testified under oath that all the
9  sexual harassment ended May 4th, 2004, correct?
10    A.  Well, I forgot I did receive phone calls from
11 Ronnie.
12    Q.  My question was:  You've told us the sexual
13 harassment ended on or before May 4th, 2004; is that
14 correct?
15    A.  Yes, I did tell you that.
16    Q.  Okay.  Are you changing your testimony?
17    A.  I believe I am.
18    Q.  Okay.  What is your testimony now on that issue?
19    A.  I did while I was at Wal-Mart receive two phone
20 calls from Ronnie Robertson in January.  It's before we
21 went to the year-end meetings, and I never received
22 any -- I never talked to him again after that.
23    Q.  So you received two telephone calls from
24 Mr. Robertson in January of 2005 while you were working
25 in Wylie?

Esquire Deposition Services          1700 Pacific Avenue, Suite 4750          Dallas, Texas 75201
Phone (214) 257-1436                       (800) 852-9737                     Fax (214) 965-9205

App. 0015

1   A.   Yes.  It was right before we went to the year-end
2   meeting.
3   Q.   Do you remember when in January '05 the year-end
4   meeting was held?
5   A.   Towards the end of the month.
6   Q.   Please tell me everything you remember about that
7   first phone call that you received from Mr. Robertson in
8   January of 2005.
9   A.   He asked who all was going to go to the meetings,
10  where we were going to be staying, we could get together
11  and have dinner, and I believe that was it on the first
12  phone call.
13  Q.   And nothing about that that you found offensive,
14  is there?
15  A.   No, not really.
16  Q.   Second phone call that you received from
17  Mr. Robertson in January of 2005, can you tell us
18  everything that you remember about that?
19  A.   He asked what -- if we were driving up there,
20  meaning Paula and Ivan and myself, and he asked what
21  time we would probably get in, and he said we could hook
22  up, and something to the extent of what I would do to
23  him when I was up there.
24  Q.   I'm going to direct your attention to Defense
25  Exhibit No. 9, which is the written statement that you

Esquire Deposition Services  
Phone (214) 257-1436

1700 Pacific Avenue, Suite 4750  
(800) 852-9737

Dallas, Texas 75201  
Fax (214) 965-9205

App. 0016

Page 82

1    A.  No, sir.
2    Q.  Did you ask him what he meant by his question of
3    what are you going to do to him?
4    A.  No, I don't.
5    Q.  You did not?
6    A.  No, I did not.
7    Q.  Did you understand that when he said that we
8    could all hook up that he meant that you him and the
9    other Wal-Mart associates that would be at the year-end
10   meeting could get together for dinner or something to
11   that effect?
12   A.  I'm sorry.  Could you repeat that again?
13   Q.  Let me just ask you this way.
14   A.  Okay.
15   Q.  Did you ask Mr. Robertson what he meant when he
16   said that we could all hook up?
17   A.  No, I didn't.
18   Q.  Did you say anything to him during that
19   conversation?
20   A.  No.  I told him we were driving, and Paula and
21   Ivan and myself.
22   Q.  Anything else?
23   A.  No.  Because I didn't know what time we were
24   going to get in or anything like that.
25   Q.  Okay.  Did you find that conversation offensive?

Esquire Deposition Services        1700 Pacific Avenue, Suite 4750         Dallas, Texas 75201
Phone (214) 257-1436                     (800) 852-9737                    Fax (214) 965-9205

App. 0017

```
 1      A.   I did the second one.
 2      Q.   Why?
 3      A.   It was the implication of what I would do to him
 4   while I was up there.
 5      Q.   Could you explain that, please.
 6      A.   I had no idea what he meant, and I didn't want to
 7   know.
 8      Q.   So to this date you don't know what he meant
 9   'cause you never asked him, correct?
10      A.   No.
11      Q.   That's correct, right?
12      A.   Yes, that is correct.
13      Q.   And so I'm trying to understand what it is about
14   what Mr. Robertson said in that second conversation that
15   you found offensive?
16      A.   Well, you could interpret "what are you going to
17   do to me" in many different ways.
18      Q.   I understand.  And I'm trying to find out given
19   that you don't know what he meant 'cause you didn't ask
20   him, what you assumed him to mean?
21      A.   He wanted to sleep with me.
22      Q.   Okay.  That was an assumption that you made?
23      A.   It was an assumption.
24      Q.   And which part of that conversation -- in other
25   words, what statement did Mr. Robertson make during that
```

Esquire Deposition Services          1700 Pacific Avenue, Suite 4750          Dallas, Texas 75201
Phone (214) 257-1436                         (800) 852-9737                   Fax (214) 965-9205

App. 0018

1  conversation that you assumed to mean that he wanted to
2  sleep with you?
3     A.  What are you going to do to me.
4     Q.  To use your own words, that statement or question
5  could mean many different things, correct?
6     A.  Yes.
7     Q.  And you're speculating or assuming that it was
8  sexual in nature, correct?
9     A.  Yes.
10    Q.  You don't have any personal knowledge as to
11 whether that is truly a sexual statement, correct?  Just
12 an assumption or speculation, right?
13    A.  Yes.
14    Q.  And you testified earlier that was the last
15 communication you ever had with Mr. Robertson?
16    A.  Yes.
17    Q.  So I'll go back to what I asked you before.  From
18 the time that you contend that you complained to a
19 Wal-Mart manager or a supervisor about alleged sexual
20 harassment at Wal-Mart from that point forward, the only
21 event that occurred you find to be offensive is this
22 single telephone conversation you had with Mr. Robertson
23 in January of 2005, correct?
24    A.  In the year 2005, that's it.
25    Q.  Well, I'll walk you through your testimony again.

Esquire Deposition Services      1700 Pacific Avenue, Suite 4750      Dallas, Texas 75201
Phone (214) 257-1436                 (800) 852-9737                   Fax (214) 965-9205

App. 0019