```
 1   did assume that I'd be moved out.
 2       Q.  Okay.  Have you -- prior to your complaint of
 3   alleged sexual harassment had you, yourself, ever used
 4   the open door policy?
 5       A.  Prior to that, no.
 6       Q.  Okay.  And so you did not have any personal
 7   knowledge of anybody being retaliated against for using
 8   the open door policy at any time while you were being
 9   sexually harassed, right?
10       A.  Do you mean personally seeing it done?
11       Q.  Yeah, personal knowledge, yes.
12       A.  No.
13       Q.  It is correct that you have no personal knowledge
14   of anybody being retaliated against for using the open
15   door policy during the period of time that you were
16   being sexually harassed, correct?
17       A.  Correct.
18       Q.  What you did have personal knowledge of was the
19   fact that the company's policy stated very clearly that
20   you cannot be retaliated against for using the open door
21   policy, correct?
22       A.  Yes.
23       Q.  And notwithstanding that, if I'm understanding
24   you correctly, you assumed based on hearsay or
25   speculation that if you used the open door policy that
```

Esquire Deposition Services          1700 Pacific Avenue, Suite 4750          Dallas, Texas 75201
Phone (214) 257-1436                         (800) 852-9737                   Fax (214) 965-9205

App. 0031

1   there would be some retaliation as a result of that,
2   correct?
3      A.  I'm sorry.  Can you -- can you say that again?
4      Q.  Sure.  All I'm trying to get on the record is:
5   You've told us that the company made very clear to you
6   and you knew this that while you were being sexually
7   harassed that you had an open door policy available to
8   you?
9      A.  Yes.
10     Q.  That the company would not tolerate harassment or
11  discrimination in the workplace, yes?
12     A.  Yes.
13     Q.  And that if you used the open door policy, you
14  would not be retaliated against?
15     A.  Yes.
16     Q.  And you also told us that during the period of
17  time that you were being sexually harassed that you did
18  not have personal knowledge of anybody being retaliated
19  against for using the open door policy, correct?
20     A.  Correct.
21     Q.  So my question is:  It is true that the only
22  reason you did not use the open door policy during the
23  period of time that you were allegedly being sexually
24  harassed was because you were assuming you would be
25  retaliated against, correct?

Esquire Deposition Services            1700 Pacific Avenue, Suite 4750         Dallas, Texas 75201
Phone (214) 257-1436                          (800) 852-9737                   Fax (214) 965-9205

App. 0032

1    A.    Yes.
2    Q.    And the basis of that assumption was just your
3    own speculation and hearsay or rumors that you had
4    heard?
5    A.    My own uncertainty as to what would happen.
6    Q.    We've now discussed the basis for your assumption
7    that you'd be retaliated against if you used the policy.
8    A.    I'm sorry.  What's the question?
9    Q.    Have we now discussed all the bases that form
10   your assumption at that time that you would have been
11   retaliated against if you used the open door policy?
12   A.    I believe so.
13   Q.    Do you need to take a break?
14   A.    No, I'm okay.
15         MR. FORMAN:  Are you okay?
16         MR. CLARK:  For a few -- for a few more
17   minutes.
18         MR. FORMAN:  Just let me know.  I have a
19   tendency to just keep on going, so just let me know if
20   you need a break.
21   Q.    (BY MR. FORMAN) Directing your attention back to
22   Defense Exhibit No. 9, the statement that you provided
23   to Wal-Mart in support of your sexual harassment
24   complaint.  I'm going to ask you to please read through
25   this and let me know if there are any other events that

Esquire Deposition Services            1700 Pacific Avenue, Suite 4750           Dallas, Texas 75201
Phone (214) 257-1436                          (800) 852-9737                     Fax (214) 965-9205

App. 0033

1   occurred in the workplace that you deemed to be sexually
2   inappropriate or offensive or sexual harassment events
3   other than those described in here.
4           MR. CLARK: Besides the phone calls she's
5   already talked about?
6           MR. FORMAN: Sure.
7           MR. CLARK: And are you -- just for
8   clarification, are you talking about directed towards
9   her?
10    Q.  (BY MR. FORMAN) I'm asking her as the plaintiff
11  who brought a sexual harassment complaint if there's
12  anything other than what's set forth in this statement
13  and the one phone call we discussed that occurred in
14  January 2005 that you are relying on in support of your
15  complaint of sexual harassment?
16    A.  This is it. The one phone call and this.
17    Q.  And so it is true that you were never touched
18  physically -- strike that.
19           Did anybody ever touch your breasts at
20  Wal-Mart?
21    A.  No.
22    Q.  Did anybody ever touch your groin at Wal-Mart?
23    A.  No.
24    Q.  Did anybody ever touch your buttocks at Wal-Mart?
25    A.  No.

Esquire Deposition Services          1700 Pacific Avenue, Suite 4750          Dallas, Texas 75201
Phone (214) 257-1436                        (800) 852-9737                     Fax (214) 965-9205

App. 0034

1  statements, so I understand all of your allegations that
2  you rely on in support of your sexual harassment
3  complaint. Can you read the first sentence?
4     A.  Where?
5     Q.  On the first page. Well, it's actually the third
6  page, but the first written --
7           MR. CLARK: Bottom of page 2.
8     Q.  (BY MR. FORMAN) I'm sorry. Actually, these start
9  on the bottom of page 2.
10    A.  Well, at Wal-Mart store 259 there were incidents
11 of inappropriate conduct between managers and hourly
12 associates and comments of a sexual nature made about
13 females or directed towards myself.
14    Q.  Okay. Let me pause you for a second. When you
15 say that there were comments of a sexual nature made
16 about females or directed towards yourself, what
17 comments are you taking about?
18    A.  When the male managers would talk about the
19 female customers or associates.
20    Q.  What comments in particular are you referring to?
21    A.  They would stand up front and as the females
22 would walk by, they'd comment on their body parts or how
23 they look.
24    Q.  I'm asking you to tell me the specific comments
25 that were made, not a general statement that comments

Esquire Deposition Services           1700 Pacific Avenue, Suite 4750           Dallas, Texas 75201
Phone (214) 257-1436                        (800) 852-9737                      Fax (214) 965-9205

App. 0035

1   were made.
2     A.   General comments were just, I'd do her, or I
3   could have her.
4     Q.   Any other comments of a sexual nature that you're
5   referring to in that statement?
6     A.   Look at those boobs.
7     Q.   Anything else?
8     A.   No.
9     Q.   Okay.  So when you say that there were comments
10  of a sexual nature made about females and directed
11  towards yourself, those comments are, I would do her, I
12  could have her, and look at those boobs?
13    A.   Yes.
14    Q.   How often did you hear those comments?
15    A.   Very often.
16    Q.   Once a week, once a month?
17    A.   Periodically.  I can't narrow it down to once a
18  week, twice a week.
19    Q.   What's your best estimate?
20    A.   About two to three times a week, I guess.
21    Q.   Okay.  Continuing with the statement.  It's the
22  third page at the top, you say, the incident of managers
23  and hourlies are me seeing a videotape of Nicole Hubert
24  entering the manager's office with Adam Toler.  And then
25  you go on to describe what you witnessed and interpreted

Esquire Deposition Services
Phone (214) 257-1436
1700 Pacific Avenue, Suite 4750
(800) 852-9737
Dallas, Texas 75201
Fax (214) 965-9205

App. 0036

1   to mean that Nicole Hubert and Adam Toler were having
2   sexual relations, correct?
3       A.  Yes.
4       Q.  But you did not actually witness Ms. Hubert or
5   Mr. Toler have sexual relations, correct?
6       A.  No.
7       Q.  All you actually did see is a videotape of the
8   two of them entering a manager's office, and then you
9   saw them exit the manager's office separately, correct?
10      A.  Together.  Her first and then him.
11      Q.  Okay.  Well, that's what I meant by separately.
12      A.  Okay.  I'm sorry.
13      Q.  You don't know what happened in the manager's
14  office, correct?
15      A.  Correct.
16      Q.  What you actually saw as opposed to what you
17  assumed to have taken place was simply two people go
18  into a room and close the door, correct?
19      A.  Yes.
20      Q.  And then you saw two people come out of the room,
21  correct?
22      A.  Yes.
23      Q.  Okay.  You would agree that what you actually
24  witnessed as opposed to what you assumed occurred is not
25  offensive, correct?

Esquire Deposition Services        1700 Pacific Avenue, Suite 4750        Dallas, Texas 75201
Phone (214) 257-1436                    (800) 852-9737                    Fax (214) 965-9205

App. 0037

1    A.   No.  Her tucking in her shirt was somewhat of an
2    indication, but it was an assumption, I assume.
3    Q.   In your -- so I'm clear, is it your testimony
4    that you watching a female tuck in her shirt is
5    offensive to you?
6    A.   No.  I didn't say that.
7    Q.   Okay.  And my question is:  It is true that what
8    you actually witnessed between Mr. Toler here and
9    Ms. Hubert was not offensive to you, correct?
10   A.   No.
11   Q.   That is correct, right?
12   A.   That is correct.
13   Q.   Do you find it personally offensive if Ms. Hubert
14   and Mr. Toler had a sexual relationship with one
15   another?
16   A.   Yes.
17   Q.   Why?
18   A.   In the store, and he's in management.  She's an
19   hourly.
20   Q.   I want to make sure we understand each other.
21   I'm not asking you whether it's appropriate.
22   A.   Okay.
23   Q.   Certainly as a member of management I would
24   assume that you assume that's inappropriate conduct.
25   A.   Yes.

Esquire Deposition Services           1700 Pacific Avenue, Suite 4750           Dallas, Texas 75201
Phone (214) 257-1436                        (800) 852-9737                      Fax (214) 965-9205

App. 0038

1   A. Yes, it is correct.
2   Q. Looks like the next thing on your statement
3   relates to Nicole Hubert telling you that she had had
4   sex with Jason Perry; is that correct?
5   A. Yes, sir.
6   Q. You never witnessed Ms. Hubert have sex with
7   Mr. Perry, correct?
8   A. No.
9   Q. Did you find it offensive that Ms. Hubert told
10  you that she had had sex with Mr. Perry?
11  A. I was surprised.
12  Q. I understand. Did you find it personally
13  offensive to you?
14  A. I took it personally because he was a co-manager.
15  Q. Could you explain that to me.
16  A. They have so much responsibility and to mess
17  around with an hourly associate it was just like I -- I
18  just felt a violation of trust.
19  Q. From a work standpoint?
20  A. Yes.
21  Q. Okay. I understand. I'm trying to separate what
22  you deem to be inappropriate in the workplace and what
23  you just generally find to be offensive or abusive. Is
24  what Nicole told you, that is, that she had had sex with
25  Mr. Perry any more offensive than what you hear or

Esquire Deposition Services          1700 Pacific Avenue, Suite 4750          Dallas, Texas 75201
Phone (214) 257-1436                       (800) 852-9737                     Fax (214) 965-9205

App. 0039

1   witness on cable television?
2       A.  That's kind of broad.  I don't -- I don't
3   understand.  Is it offensive to me in the workplace?
4       Q.  Is it personally humiliating to you that she told
5   you that she had sex with Mr. Perry?
6       A.  It didn't affect me personally, no.  I guess not.
7       Q.  Continuing on your statement.  The next event
8   that you describe is that Ms. Hubert played a phone
9   message for you that she had received from Mr. Perry; is
10  that correct?
11      A.  Yes.
12      Q.  And apparently in that phone message, Mr. Perry
13  detailed their night at a motel?
14      A.  Yes.
15      Q.  Okay.  Can you tell us what you remember
16  specifically that you heard on that phone message?
17      A.  He was surprised that she was never -- she never
18  was naked in front of a man before and performance.
19      Q.  Okay.  I'm asking you to tell us specifically
20  everything that you remember that you heard on that
21  phone message.
22      A.  That's about all I can really remember.  It's
23  been a while.
24      Q.  Well, you said performance.  What -- what about
25  performance?

Esquire Deposition Services        1700 Pacific Avenue, Suite 4750        Dallas, Texas 75201
Phone (214) 257-1436                    (800) 852-9737                    Fax (214) 965-9205

App. 0040

1    A.   Longevity.  How long he could go.
2    Q.   Okay.  And so if I'm hearing what you remember of
3  that phone message that you heard, you recall Mr. Perry
4  indicate that he was surprised that Ms. Hubert had never
5  been naked in front of a man before.  And you remember
6  him stating that he was commenting on how long he and
7  Ms. Hubert had had sex; is that correct?
8    A.   Yes.
9    Q.   Is that all that you remember about that message?
10   A.   Pretty much.
11   Q.   Okay.  There was nothing more graphic than that,
12 correct?
13   A.   That's all I can really remember.
14   Q.   Did you find that phone message to be offensive
15 to you personally?
16   A.   It was offensive, but to me personally, no.
17         MR. CLARK:  How about if we take a short
18 stretch break?
19         MR. FORMAN:  Sure.
20         (A break was taken from 2:54 p.m. to
21         3:03 p.m.)
22   Q.   (BY MR. FORMAN) Continuing on.  We've gone
23 through your statement, and we were up to your statement
24 on page 3.  About midway through the page it looks like
25 the next thing that you complained about or took issue

Esquire Deposition Services        1700 Pacific Avenue, Suite 4750        Dallas, Texas 75201
Phone (214) 257-1436                     (800) 852-9737                  Fax (214) 965-9205

App. 0041