Page 154

1    Q.  In February of 2005, that is during the period of

2    time that your decision-making day coaching was active,

3    you were accused of misconduct, correct?

4    A.  Correct.

5    Q.  Do you know who accused you of misconduct?

6    A.  I believe an assistant manager.

7    Q.  Tell me how you learned of the allegations made

8    against you in February of 2005.

9    A.  Glen Locket interviewed me.

10   Q.  Do you recall what position Mr. Locket held at

11   that time?

12   A.  District loss prevention.

13   Q.  He's a district manager over loss prevention?

14   A.  Just district loss prevention is all I know him

15   as.

16   Q.  Have you ever worked within loss prevention?

17   A.  No.

18   Q.  Do you know that Mr. Locket as a district loss

19   prevention supervisor is responsible for overseeing the

20   district?

21   A.  Yes.

22   Q.  Tell me what you remember about your interview

23   with Mr. Locket.

24   A.  He asked me about Maria Gonzales, I believe her

25   name was, and if she had asked for an interpreter and

Page 155

1    why -- why did I terminate two other associates.   And I

2    told him that I was informed to do so.

3        Q.   You told Mr. Locket that you were asked to

4    terminate Ms. Gonzales and two other associates by

5    Ms. Stover?

6        A.   Yes.

7        Q.   When Mr. Locket asked you whether Maria Gonzales

8    asked for an interpreter during your exit interview with

9    her, what did you tell him?

10       A.   No.  She did not say, I need an interpreter.

11       Q.   Okay.  But she did explain to you that she wasn't

12   understanding what you were saying, correct?

13       A.   She said she didn't understand the CBLs.

14       Q.   And what did you respond when she told you that

15   she didn't understand the CBLs?

16       A.   That's when I started backing off on -- I didn't

17   do the termination.

18       Q.   Okay.  Do you recall that Ron Trimball was

19   present when you had this exit interview with Ms.

20   Gonzales?

21       A.   Yes.

22       Q.   And Ron Trimball is an assistant manager?

23       A.   Yes.

24       Q.   You asked Mr. Trimball to sit in the termination

25   of Ms. Gonzales as a witness?

Esquire Deposition Services              1700 Pacific Avenue, Suite 4750         Dallas, Texas 75201
Phone (214) 257-1436                           (800) 852-9737                   Fax (214) 965-9205

App. 0075

Page 156

1    A.  Yes.

2    Q.  Do you know what Mr. Trimball reported to

3  Wal-Mart management about what occurred during that exit

4  interview between you and Ms. -- strike that.

5          Do you know what Mr. Trimball reported to

6  Wal-Mart management about what occurred during this exit

7  interview of Ms. Gonzales?

8    A.  Not in its entirety.  All that I do know is that

9  he said I refused her an interpreter.

10   Q.  Okay.  So you are aware that Mr. Trimball accused

11  you of denying Ms. Gonzales' request for a Spanish

12  interpreter?

13   A.  Yes.

14   Q.  Are you aware that Ms. Gonzales, herself, accused

15  you of denying her request for a Spanish interpreter?

16   A.  Yes.

17   Q.  And I know it's your position that Ms. Gonzales

18  never asked for a Spanish interpreter during the exit

19  interview?

20   A.  Yes.

21   Q.  Okay.  You would agree, though, that as a member

22  of Wal-Mart management, if an associate that does not

23  speak English well asks for an interpreter, you are

24  required to get one, correct?

25   A.  I'm aware of this, yes.

Esquire Deposition Services                1700 Pacific Avenue, Suite 4750          Dallas, Texas 75201
Phone (214) 257-1436                              (800) 852-9737                       Fax (214) 965-9205

                                                                                         App. 0076

1    Q.   This occurred at a point in time where the

2  company could have terminated you given that you had an

3  active decision-making day coaching in your file,

4  correct?

5    A.   Right.

6    Q.   Rather than being terminated, you were demoted,

7  correct?

8    A.   Correct.

9    Q.   Okay.  And even though you were demoted, your pay

10  and benefits did not decrease, correct?

11    A.   Correct.

12    Q.   Did Mr. Locket explain to you that you could have

13  been terminated as opposed to demoted at that time?

14    A.   Yes.

15    Q.   From that point in time when you were demoted for

16  refusing to give Ms. Gonzales an interpreter and for

17  having a heavy-handed managerial style up until today,

18  have you suffered any loss of pay?

19    A.   No, it's always stayed the same.

20    Q.   From that point in time that you were demoted up

21  until today, have you had any loss of benefits?

22    A.   No.

23    Q.   From the time you were demoted in February 2005

24  and became an assistant manager as a result of that

25  demotion, have you suffered any loss of corporate rank

Esquire Deposition Services
Phone (214) 257-1436

1700 Pacific Avenue, Suite 4750
(800) 852-9737

Dallas, Texas 75201
Fax (214) 965-9205

App. 0077

1   or title?

2       A.   Title.   I went from a co-manager to an assistant

3   manager.

4       Q.   Now, I understand that as a result of demotion in

5   February 2005, your title changes from co-manager to

6   assistant manager, correct?

7       A.   Yes.

8       Q.   My question is:   From that point in time -- from

9   the time your title changed from co-manager to assistant

10   manager up until today, have you had any change in your

11   corporate title or rank?

12       A.   No.

13       Q.   Do you know who made the decision to demote you

14   in February 2005?

15       A.   Glen.

16       Q.   To your knowledge, was Mr. Locket, Glen Locket,

17   involved in the red book investigation relating to your

18   sexual harassment complaint?

19       A.   No, not to my knowledge.

20       Q.   Okay.   You never complained to Mr. Locket about

21   alleged sexual harassment, correct?

22       A.   No.

23       Q.   You don't have any personal knowledge of

24   Mr. Locket being made aware -- strike that.

25               As of the time that you were demoted, you

1    had not yet filed a charge of discrimination, correct?

2        A.   Correct.

3        Q.   So it is true that you have no reason to believe

4    that the decision maker with regard to your demotion,

5    Mr. Glen Locket, had any knowledge of you ever opposing

6    sexual harassment in the workplace, correct?

7        A.   Correct.

8        Q.   And the decision maker with regard to your

9    demotion, Mr. Locket, could not have known of your

10   participation in the EEOC or your filing of the charge

11   of discrimination 'cause it had not yet occurred as of

12   the time he made the decision to demote you, correct?

13       A.   Correct.

14       Q.   As a result of the red book investigation that

15   was conducted as a result of your sexual harassment

16   complaint, was anybody disappointed or terminated to

17   your knowledge?

18       A.   Yes.

19       Q.   Who?

20       A.   Ronnie Robertson.

21       Q.   He was terminated?

22       A.   Yes.

23       Q.   Was anybody else disciplined or terminated to

24   your knowledge?

25       A.   John Farrar.

Esquire Deposition Services            1700 Pacific Avenue, Suite 4750        Dallas, Texas 75201
Phone (214) 257-1436                          (800) 852-9737                 Fax (214) 965-9205

                                                                             App. 0079

Page 165

```
 1      Q.   Was he discharged or terminated?

 2      A.   He was terminated.

 3      Q.   Anybody else?

 4      A.   To my knowledge that's it.

 5      Q.   When you were demoted in February '05 for the

 6   allegation we've already discussed, you were then

 7   transferred from the Wylie store; is that correct?

 8      A.   I'm sorry.  What was that?

 9      Q.   As a result of your demotion in February '05 for

10   the allegations we've already discussed, you were

11   transferred from the Wylie store to the Frankford and

12   Marsh store?

13      A.   Yes.

14      Q.   And you were told that the reason you were being

15   transferred was that it was company policy to have a

16   manager transferred to another store after he or she is

17   demoted, correct?

18      A.   That wasn't explained to me at the time.

19      Q.   Okay.  Have you since learned that?

20      A.   Yes.

21      Q.   You do know that's company policy, correct?

22      A.   Yes.

23      Q.   Are you aware of anybody else at Wal-Mart who

24   was -- strike that.

25               Are you aware of any other Wal-Mart manager
```

Esquire Deposition Services                    1700 Pacific Avenue, Suite 4750                    Dallas, Texas 75201
Phone (214) 257-1436                                  (800) 852-9737                              Fax (214) 965-9205

                                                                                                      App. 0080

1          MR. CLARK:   Okay.   Well, whenever he sticks

2    his head out is when we'll take a break.

3          MR. FORMAN:   Okay.   No problem.

4          MR. CLARK:   Unless you want to take one

5    before that?

6          THE WITNESS:   No.   I just want to get it

7    over with.

8          MR. FORMAN:   We're on the home stretch.

9     Q.   (BY MR. FORMAN) Actually before we go on to this,

10   you have told us that in terms of your complaint of

11   sexual harassment I know about Defense Exhibit No. 8

12   that you sent to Mr. Murphy on May 5th, 2004, right?

13    A.   Yes.

14    Q.   And you tell us that at some point later you

15   complained to Paula Stover, correct?

16    A.   Yes.

17    Q.   How many times did you speak to Paula Stover

18   about the alleged sexual harassment?

19    A.   About three or four times.

20    Q.   And do you remember what you and she discussed?

21    A.   We talked about when she called Alan to see what

22   kind of co-manager performance I was, and I told her

23   about incidents that happened at the store.

24    Q.   Okay.   I want you to tell me everything that you

25   remember in terms of your discussions with Ms. Stover

Esquire Deposition Services                1700 Pacific Avenue, Suite 4750              Dallas, Texas 75201
Phone (214) 257-1436                              (800) 852-9737                        Fax (214) 965-9205

App. 0081

Page 170

1    about the alleged sexual harassment.

2        A.   I told her about the communication.

3        Q.   I'm sorry.  You told her about the --

4        A.   Communication meetings.

5        Q.   What'd you tell her about the communication

6    meetings?

7        A.   Pretty much what I put in my statement about the

8    dirty jokes that went on and their talking about their

9    wives and their partners, what they would do when we

10   would stand up at the front.

11       Q.   Was that one of the three conversations?

12       A.   Yes.  And I told her when Ronnie had called me.

13   I told her about that.

14       Q.   You're referring to the conversation you had with

15   Mr. Robertson in January 2005 as you described earlier

16   today?

17       A.   Yes.

18       Q.   Okay.  That's the second conversation you had

19   with her?

20       A.   Uh-huh.

21       Q.   Yes?

22       A.   Yes.

23       Q.   And did you have any other conversation with her?

24       A.   I'm pretty sure I did.  We talked about it

25   periodically.  I just can't remember an exact date to

Esquire Deposition Services                    1700 Pacific Avenue, Suite 4750                    Dallas, Texas 75201
Phone (214) 257-1436                              (800) 852-9737                              Fax (214) 965-9205

                                                                                          App. 0082

Page 171

1    give you.

2       Q.  Okay.  When you say that you told Ms. Stover

3    about the communication meetings, did you tell

4    Ms. Stover that you wanted her to investigate or take

5    any action?

6       A.  No.

7       Q.  Okay.  And so if I'm understanding correctly, you

8    are having a conversation with Ms. Stover and you were

9    just describing to her the way the managers behaved at

10   the Rockwall store when you worked there?

11      A.  Yes.

12      Q.  You didn't say that you believed you were

13   sexually harassed or something to that effect.  It was

14   more a description of what had occurred?

15      A.  I told her there was sexual harassment in the

16   store.

17      Q.  Okay.  But you didn't tell her that you believed

18   you were being sexually harassed, correct?

19      A.  No.

20      Q.  That is correct, right?

21      A.  That's correct, right.

22      Q.  If I'm understanding correctly, this conversation

23   you had with Mr. Stover before the January 2005

24   telephone call that you received from Mr. Robertson, was

25   you stating generally that there's sexual harassment at

Esquire Deposition Services            1700 Pacific Avenue, Suite 4750        Dallas, Texas 75201
Phone (214) 257-1436                        (800) 852-9737                    Fax (214) 965-9205

                                                                                  App. 0083

Page 173

1   were just having a friendly conversation?

2      A.  I felt comfortable talking to her.

3      Q.  Okay.  And so you were having a friendly

4   conversation.  You were describing what had occurred at

5   the other store?

6      A.  We were having a conversation.

7      Q.  You didn't expect her to take any action as a

8   result of that conversation, did you?

9      A.  I don't -- I didn't know what to expect.

10     Q.  Well, you told us you didn't ask her to take any

11  action, correct?

12     A.  Correct.

13     Q.  You were just having a conversation with her.

14  You did not expect her to take any action, did you?

15         MR. CLARK:  Objection as to form.

16     Q.  (BY MR. FORMAN) Did you?

17     A.  I was having a conversation with her.  I didn't

18  know what she was going to do.

19         (Defense Exhibit No. 11 marked.)

20     Q.  (BY MR. FORMAN) Let me show you what's been

21  marked as Defense Exhibit No. 11 for identification.

22  I'll ask you to take a look at that and ask you if you

23  recognize that document.

24     A.  Yes.

25     Q.  This is the one and only charge of discrimination

Esquire Deposition Services            1700 Pacific Avenue, Suite 4750        Dallas, Texas 75201
Phone (214) 257-1436                        (800) 852-9737                     Fax (214) 965-9205

App. 0084