2. Discuss the situation with the Associate to get their side and any additional facts. Gather Associate(s) statement, if applicable.
3. Properly classify whether the action is related to job performance or a specific behavior (misconduct or gross misconduct), including a specific reference to any policy or procedure including Health Privacy Standards.
4. Determine the appropriate level of coaching. Depending upon the behavior, steps may be skipped.
5. Complete the Coaching for Improvement in the System.
6. Follow the procedures for effective coaching (set climate, etc.).
7. Conduct the Coaching for Improvement session, along with an hourly supervisor or another salaried member of management present, if the facts and the initial discussion with the Associate conclude a coaching is appropriate.
8. The Associate must complete the Plan of Action Section for both the written and Decision-Making Day level of Coaching for Improvement.

Coaching for Improvement Levels

Level One - Verbal Coaching
Verbal Coaching is used to notify an Associate that their conduct or performance does not meet Wal-Mart's stated expectations, and what they need to do to correct the situation. It is always done verbally and in a constructive, non-intimidating way.

- Advise the Associate that this is the first level of our Coaching for Improvement process.
- The Supervisor should document the time, place and content of this conversation in the Coaching for Improvement System in the Behavior Observed Section.
- The Associate is not required to acknowledge the coaching.
- The Hourly Supervisor and salaried member of management should enter the Coaching into the system and then acknowledge the Verbal Coaching once it has been conducted.

Level Two - Written Coaching
The Written Coaching is a more serious discussion than a Verbal Coaching. It is the first level of Coaching for Improvement, which requires the Associate's acknowledgement.

- The Coaching for Improvement, with an acceptable detailed action plan, should be completed and acknowledged by the Associate.

Level Three - Decision-Making Day
This is the final opportunity for an Associate to evaluate their behavior in view of Wal-Mart's expectations prior to Termination.

- Level Three must also be formally documented and should be acknowledged by the Associate.
- Clearly explain the deficiencies noted at earlier Coaching for Improvement Levels, if any, and the specific improvement required.
- The Associate should complete an acceptable detailed action plan.

Decision-Making Day

- After conducting the Level Three session, the Associate is given one (1) day off with pay to decide whether they will make the required improvement. The Decision-Making Day is the Associate's next scheduled workday. The Associate should be paid for the number of hours they were actually scheduled to work. For payroll, designate these hours as "Other Pay - Decision-Making Day".
- Meet with the Associate at the start of the next scheduled work day after the Decision-Making Day to review the Associate's detailed action plan developed during the Decision-Making Day and to discuss their decision as to making the required improvement. The Associate should at this time input their detailed Action Plan into the Coaching for Improvement System.
- An Associate may be given only one (1) Decision-Making Day within a 12 month period. If the Associate has already been given a Decision-Making Day within the preceding 12 month period and their performance or behavior continues to not meet Company expectations, the Associate is subject to immediate termination.

Demotion may be included as part of the coaching process at Level Three - Decision-Making Day for both job performance and misconduct issues. Demotions should always be accompanied by appropriate

documentation.

Level Four - Termination
Associates who are deemed to have engaged in Gross Misconduct are subject to immediate termination. This is not part of the Coaching for Improvement process. If the salaried member of management is uncertain if a particular behavior is Gross Misconduct, the District Manager/Director of Operations, Regional Personnel Manager, or the personnel representative for the area should be contacted to discuss the situation before any disciplinary action is taken. For matters pertaining to Health Privacy Standards, you may also call Wal-Mart's HIPAA Privacy Officer at 1-800-421-1362 or 479-621-2929.

Any level of Coaching for Improvement for a violation of the Health Privacy Standards will be forwarded electronically to the HIPAA Privacy Officer.

**Behavior Classification**

Three behaviors are addressed below by this policy:

- Job Performance.
- Misconduct.
- Gross Misconduct.

Any combination of these behaviors may result in additional disciplinary action up to and including termination.

Job performance includes behavior that does not meet the reasonable expectations/standards set for all Associates in the same or similar position.

Misconduct includes behavior other than job performance, which falls below stated expectations, violates Company policy, does or may interfere with safe, orderly, or efficient operations or which creates a hostile or offensive environment for Associates, Customers/Members, and/or Suppliers, including compliance with Health Privacy Standards.

Examples of misconduct include, but are not limited to:

- Attendance or punctuality that does not meet clearly communicated Company/facility guidelines.
- Unauthorized use of Company time (i.e. loafing) or personal business on Company time.
- Reckless use of equipment.
- Horseplay.
- Harassment/Inappropriate Conduct.
- Understocking merchandise.
- Insubordination.
- Grazing (i.e., eating food items from an open bag, eating items from claims, etc.)
- Inappropriate disclosure of another person's (Associate or Customer/Member) or Company confidential information.
- Unauthorized Sale of age-restricted items (i.e., alcohol, tobacco, or any other item restricted by Wal-Mart guidelines or law).
- Improper release of prescription medications from the Pharmacy.
- Unauthorized use or disclosure of health information in violation of the Health Privacy Standards Policy. (i.e., An Associate answering the phone in Pharmacy or Optical and releasing information without first verifying the identity of the caller).

Gross Misconduct will not be tolerated. Coaching for Improvement will not be used to address gross misconduct. The employment of an Associate who is deemed to have engaged in gross misconduct is subject to immediate termination. Associates terminated for Gross Misconduct are not eligible for re-hire. The following list is not all-inclusive but serves as examples of conduct, which are usually classified as gross misconduct and may result in immediate termination:

- Intentional misuse of Company time (claiming pay for time not worked).
- Theft.
- Dishonesty/Compromised integrity.

- Fraud.
- Abuse of Associate discount.
- Falsification of Company records.
- Possession/use of a firearm or other dangerous weapon on Company property.
- Possession/use/consumption of drugs or alcohol on Company property; and/or reporting to work impaired by either substance.
- Serious Harassment/Inappropriate Conduct.
- Fighting/Assault.
- Rude/Abusive conduct toward a Customer/Member or another Associate.
- Under-ringing merchandise or ringing an Associate's own purchase.
- Grazing (i.e., opening packages, purposefully damaging items, removing items from the shelf to eat, or any other act which causes a financial loss to the Company).
- Unauthorized surveillance of any Associate or salaried member of management.
- Negligent Sale of age restricted items (i.e., alcohol, tobacco, or any other item restricted by Wal-Mart guidelines or law).
- Unauthorized sale of any type of firearm.
- Negligent release of prescription medications from the Pharmacy.
- Violation of certain federal or state criminal statutes.
- Any willful use or disclosure of health information in violation of the Health Privacy Standards (i.e., Associate discloses health information without a business reason to disclose or to harm the reputation of the other person).

If assistance is needed determining if a particular infraction should be classified as Gross Misconduct, call the District Manager/Director of Operations, Regional Personnel Manager or the personnel representative for the area to discuss prior to termination. For matters pertaining to Health Privacy Standards, you may also call Wal-Mart's HIPAA Privacy Officer at 1-800-421-1362 or 479-621-2929.

### Associates Employed Less Than 90 Days and Home Office Temporary Associates

Associates employed less than 90 Days and Home Office Temporary Associates should be given verbal feedback regarding their performance and behavior. The formal coaching process is preferred, but not required.

Issues of performance should be addressed before an Associate is terminated, allowing them an opportunity to meet Company expectations. However, any performance issue may be grounds for termination.

### Refusal to Provide Plan of Action/Acknowledge Expected Behavior

Associates are required to provide an acceptable written plan of action with both the Written and Decision-Making Day levels of Coaching for Improvement. If the Associate fails to provide the acceptable written plan of action and acknowledge the expected behavior, the salaried member of management who administered the coaching and the next level of management should:

- Restate the problem, why it is a problem, and the expectations.
- Ask the Associate to confirm and restate their understanding.
- Listen to the Associate's response and explanation.
- Explain that if the Associate refuses to write an acceptable plan of action and acknowledge the expected behavior, they will be advanced to the next level of coaching, up to and including termination.

### Refusal to Acknowledge a Coaching for Improvement

If the Associate refuses to acknowledge a Coaching for Improvement, you should:

- Restate the problem, why it is a problem and the expectations.
- Ask the Associate to confirm and restate their understanding.
- Listen to the Associate's response and explanation.
- Explain that acknowledging the coaching is to acknowledge the Coaching for Improvement session was held. The Associate may also include any comments on the coaching, including that they do not agree.

- Always have another salaried member of Management present for the discussion and to acknowledge the completed coaching.

If the Associate refuses to acknowledge the Coaching for Improvement, the next level of supervision should discuss the situation with the Associate who is being coached and also must acknowledge the completed coaching.

### Retention/Active Period

Coaching for Improvement documentation will be maintained electronically for 12 months under an "active" status. Twelve months after the last Coaching for Improvement session, if subsequent misconduct/poor performance does not reoccur, the Coaching for Improvement documentation becomes "inactive". Notify the Associate that due to their improved behavior/performance, the Coaching for Improvement documentation is now "inactive".

"Inactive" coachings will be electronically placed in a separate "Inactive" database which is maintained for five (5) years after the Associate leaves the Company.

All coachings pertaining to Health Privacy Standards must be retained for at least six (6) years by the Company and Wal-Mart's HIPAA Privacy Officer.

### Leave of Absence

The active period of a coaching is suspended during a leave of absence. When the Associate returns to work, the "clock" will start to run again.

An Associate was issued a Written Coaching January 4. She took a leave of absence from May 4 until July 4. The active period of the coaching is then extended for the same length of time as her leave. Thus, instead of the coaching expiring January 4 (12 months from the date of issuance), it will expire March 4.

### Resources

| Forms: | Coaching System: Coaching for Improvement System |
|---|---|
| Guides: | Coaching for Improvement System Entry Guide<br>Coaching for Improvement System Search Guide |
| Related Policies: | Investigation and Suspension Policy (PD-57) |
| Personal Contacts: | District Managers/Director of Operations<br>Regional Personnel Managers<br>Corporate Associate Relations<br>Legal Department |
| Additional information may be found in various Training and Communication documentation or other materials. | |

All Material Wal-Mart Stores Inc. Confidential. © 2003.

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

CIVIL ACTION NO. 3:05-CV-1805-L
(ECF)

KEELY DAVIS,

    Plaintiff,

vs.

WAL-MART STORES, INC.,

    Defendant.

_____/

## DECLARATION OF JOHN E. MURPHY

I, John E. Murphy, make the following declaration under penalty of perjury pursuant to the laws of the United States:

1. I am over eighteen (18) years of age, of sound mind, and suffer from no disease or defect that would render me incompetent to make this declaration.

2. I make this sworn declaration from my own personal knowledge, for use in the above-styled matter, and for all lawful purposes.

3. I am a Regional Vice President for Wal-Mart Stores, Inc. ("Wal-Mart"). I have held that position since approximately 1997.

4. As a Regional Vice President for Wal-Mart, my job duties include receiving and investigating complaints, concerns and grievances brought to my attention by Wal-Mart personnel.

5. On or about May 5, 2004, Plaintiff Keely Davis contacted me by telephone to discuss her disagreement with the decision of her District Manager, Alan Schamber, to give her a

Decision-Making Day Coaching and to demote her from the position of Co-Manager to Assistant Manager as a result of allegations that Ms. Davis instructed associates to inventory three missing computers, rather than reporting them as shrinkage.

6. During my telephone conversation with Ms. Davis on May 5, 2004, we discussed Ms. Davis's version of the facts related to the computer inventory issue.

7. At the conclusion of that conversation, I instructed Ms. Davis to fax to Loss Prevention a written statement setting forth her version of the facts, so Wal-Mart would have a documented record of same.

8. Following my conversation with Ms. Davis, and upon reviewing her version of events, I decided to overturn Mr. Schamber's decision to demote Ms. Davis.

9. At no time during our telephone conversation of May 5, 2004, or any time thereafter, did Ms. Davis expressly state to me that she believed she was sexually harassed or discriminated against, or otherwise say anything that I construed as a complaint of sexual harassment.

10. In my brief review of the written statement that Ms. Davis faxed to Loss Prevention following my conversation with her on May 5, 2004, I did not interpret anything contained in that statement as a complaint of sexual harassment.

11. I did not provide Ms. Davis's statement to, or discuss the specific contents of her statement with, anyone, including but not limited to Regional Personnel Manager Sam Sanchez.

**PURSUANT TO 28 U.S.C. § 1746, I VERIFY UNDER PENALTY OF PERJURY UNDER THE LAWS OF THE UNITED STATES OF AMERICA THAT THE FOREGOING IS TRUE AND CORRECT.**

DATED: August 1, 2006.

_____
JOHN E. MURPHY

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

CIVIL ACTION NO. 3:05-CV-1805-L
(ECF)

KEELY DAVIS,

    Plaintiff,

vs.

WAL-MART STORES, INC.,

    Defendant.

## DECLARATION OF SAM R. SANCHEZ

I, Sam R. Sanchez, make the following declaration under penalty of perjury pursuant to the laws of the United States:

1. I am over eighteen (18) years of age, of sound mind, and suffer from no disease or defect that would render me incompetent to make this declaration.

2. I make this sworn declaration from my own personal knowledge, for use in the above-styled matter, and for all lawful purposes.

3. I am a former Regional Personnel Manager for Wal-Mart Stores, Inc. ("Wal-Mart"). I held that position from approximately March 8, 2002 to _June 2006_.

4. As Regional Personnel Manager, my job duties include investigating allegations of wrongdoing by Wal-Mart managerial personnel.

5. In early February 2005, an associate who Plaintiff, Keely Davis, had terminated alleged that Ms. Davis had denied her request for an interpreter during her exit interview.