6. District Loss Prevention Supervisor Glen Lockett and I conducted an investigation into the allegations that Ms. Davis had denied the associate's request for an interpreter.

7. As part of our investigation, we interviewed and obtained written statements from Ms. Davis and several associates, including another member of management who was present during the exit interview. Copies of the statements that we obtained as part of our investigation are attached hereto as Exhibit 1.

8. Although Ms. Davis denied the allegations, Mr. Lockett and I concluded, based on the witness statements, that the allegations appeared to be true.

9. Accordingly, I determined that Ms. Davis should receive a Coaching in accordance with Wal-Mart's Coaching for Improvement Policy.

10. Because Ms. Davis already had an active Decision-Making Day Coaching, I decided that Ms. Davis should be demoted from Co-Manager to Assistant Manager and transferred to another store.

11. It is Wal-Mart policy to transfer members of management who have been demoted to different stores.

12. Because Ms. Davis had an active Decision-Making Day Coaching at the time the allegations were raised regarding her denying an interpreter to an associate, her employment could have been terminated immediately under the Coaching for Improvement Policy.

13. I was the sole decision-maker with respect to the decision to demote and transfer Ms. Davis in February 2005.

15. In March or April 2005, I learned from Store Manager Paula Stover that, after Ms. Davis was demoted and transferred, Ms. Davis advised Ms. Stover that she intended to file a sexual harassment claim against Wal-Mart.

16. Upon learning of Ms. Davis's conversation with Ms. Stover, I contacted Ms. Davis to discuss her allegations and, immediately thereafter, I instructed District Manager Aaron Carter to conduct a "red book" investigation into Ms. Davis's allegations.

17. As a result of information uncovered during the course of the investigation into Ms. Davis's allegations, four individuals, including Ronnie Robertson, were terminated for gross misconduct.

PURSUANT TO 28 U.S.C. § 1746, I VERIFY UNDER PENALTY OF PERJURY UNDER THE LAWS OF THE UNITED STATES OF AMERICA THAT THE FOREGOING IS TRUE AND CORRECT.

DATED: August 4, 2006.

_____
SAM R. SANCHEZ

App. 0131

# EXHIBIT 1

## Statement

My name is **KEELY DAVIS**, I live at **3434 Salmon**, **Anchor, Tx 95048**. I make this statement of my own free will. It is my statement and no one else's.

I was told by my store manager Paula that I was to terminate three associates. Maria Gonzales being one of them. I called Maria to the office. I asked her if she had purchased some slippers that went on clearance that day. She said yes. I asked her if she knew that she couldn't do that and it was one of Wal-Marts policies. She said no and that she had to take CBL's two or three times in order to pass. She said she didn't understand the CBL's or any policy. Maybe I wasn't comprehending that she didn't understand me. Had I realized that I would of gotten someone who spoke Spanish. She became upset and tears ran down her face. At this point I became unsure about the termination I was told to do. She didn't know she couldn't buy the slippers. I told her not to cry and that I would suspend her until I spoke to Paula and I would call her. I then had an associate knock at the door (Armida) who said Maria needed a ride home and she was crying. I said yes, of course let the CSS know on your way out.

The above statement is a true statement to the best of my knowledge and belief. No threats or promises were made by anyone to get me to make this statement. I have had complete freedom to leave the premises.

Signature: *Keely Davis*

Witness: _____
Witness: _____
Store #/Location: _____

Date & Time: 2-10-05

Page ___ of ___

DEF 00149
App. 0132

# Statement

My name is Ron Trimble, I live at _____, _____. I make this statement of my own free will. It is my statement and no one else's.

On Saturday, Feb. 5 2005, around 2:00 PM, I was called back to the AD office by Keely Davis co-mgr, to sit in on a termination. She called back Brenda, D-82 merchandise supervisor, and asked her about the purchasing of some slippers that were reduced to a dollar. She told her that she was understocking and that was grounds for termination. Brenda asked her what she meant by understocking. Keely told her that she had her on tape doing that. Brenda then said could I see the tape, because I was buying these on break. Keely told her that she did a CBL on understocking and for that she was terminated. Keely told her, to give me your vest, discount card and any other property that belongs to Walmart. Brenda then left.

The above statement is a true statement to the best of my knowledge and belief. No threats or promises were made by anyone to get me to make this statement. I have had complete freedom to leave the premises.

Witness: _____ DLPS 106

Signature: _____

Witness: _____

Store #/Location: _____

Date & Time: 2/10/05  6:00 AM

Page ___ of ___

DEF 00174

App. 0133

# Statement

My name is _Ivan Benham_, I live at _____, _____. I make this statement of my own free will. It is my statement and no one else's.

On Monday, February 7, I was asked by Co-Mgr. Keely to sit in on an issue with an associate by the name of Karla Jones. I was in their as a witness and the following took place. Keely explained to Karla that she was observed taking or getting some clearanced slippers and taking them to layaway and putting them under the counter to purchase later. She asked Karla if she remembered taking the CBL on understocking and Karla couldn't exactly remember if she had or not. Keely replied by saying that she also had her on video of her doing this and that she was going to have to terminate her for this. Karla did reply by saying that she did put them under the counter, and that she didn't realize that her behavior was considered understocking. Keely said "regardless, you clearly knew what you were doing" and Karla simply replied by saying ok. Once Karla had left the ad office I asked if I could also sign the green sheet. My feelings on this is that I feel like this was a bad mgmt. decision. We have policies and procedures in place for these type of situations and as mgmt. we have to follow certain guidelines when it comes to coachings or terminations. I strongly believe that this was a wrongful termination and that this should have resulted in a coaching. This should have been a coaching because the term "understocking" has not been ~~communicating~~ communicated enough with associates.

The above statement is a true statement to the best of my knowledge and belief. No threats or promises were made by anyone to get me to make this statement. I have had complete freedom to leave the premises.

Witness: _John ___ Dept 106_

Signature: _Ivan Benham_

Witness: _____

Store #/Location: _5210_

Date & Time: _8/10/05  12:29 pm_

Page ___ of ___

DEF 00175

App. 0134

## Statement

My name is *Ivan Benham*. I live at _____. I make this statement of my own free will. It is my statement and no one else's.

To whom it may concern,

My feelings and concerns of Paula Stone and Keely Davis are as follows. I have nothing but the utmost respect for Paula and no respect for Keely. I believe that Keely has a lot of influence on Paula. When Keely is not around, it seems to me that associates are more receptable and can easily approach Paula. Associates feel very uncomfortable when approaching Paula and especially Keely. Associates have made comments to other members of management asking why is Keely acting more like the store manager and Paula not acting like the store manager. Paula and Keely are always together, whether in the store or out to lunch and associates feel very uncomfortable around them. Associates and mgmt. are afraid that if they make a wrong move or if something is perceived in a derogatory manner, that Keely would make sure that something is done about it.

Associates also feel, that or believe that when they are called to the office by Keely that they are automatically going to be terminated. I believe that Paula is a good store manager and that Keely gives her a bad reputation. Keely boasts about how many coachings or terminations "year to date," she has done. For someone who enjoys coaching or terminating an associate and then boasting about it, certainly does not belong in a store that is trying to implement a new store structure.

The above statement is a true statement to the best of my knowledge and belief. No threats or promises were made by anyone to get me to make this statement. I have had complete freedom to leave the premises.

Witness: _____ PLB, 106

Signature: *Ivan Benham*

Store #/Location: _____

Date & Time: 2/10/05

Page ___ of ___

## Statement

My name is Ralph Brunson, I live at _____,
_____. I make this statement of my own free will. It is my statement and no one else's.

To whom it may concern, I feel, and I think that a lot of the other management and associates feel that Keely Davis does not practice Respect for the Individual. On one occasion I witnessed Keely being very rude to a Hourly Associate, so bad that it made her cry, And I heard from another Asst. Manager that she did the same thing to another Hourly Associate an Instock supervisor and made him cry because she was so disrespectful that the associate came in and quit the next day. I have also witnessed on more than one occasion, Keely walk into the office and say "so who or how many Associates am I going to have to fire today" or how many Associates will I have to coach today.

The above statement is a true statement to the best of my knowledge and belief. No threats or promises were made by anyone to get me to make this statement. I have had complete freedom to leave the premises.

Witness _____

Witness _____

Signature _____

Store #/Location _____

Date & Time  2-10-05  4:30 pm

Page ___ of ___

DEF 00177

App. 0136

# Statement

My name is Ron Trimble, I live at 5210 Wylie TX,  _____. I make this statement of my own free will. It is my statement and no one else's.

Ever since this store has opened Keely and Paula have treated our associates with disrespect. If they don't like someone, they find ways to get rid of them. Yvette, who was a CSS, was demoted to a cashier at the Garden shop. Maybe she doesn't need to be a CSS but she would be good doing modulars or even a merchandise supervisor. Paula or Keely will not give her the opportunity. If I voice my opinion on how we treat our associates or ask why we did something I disagree with, then I will either get a bad schedule for 3 or 4 wks and harassed on the walkie all day asking if I got something done yet or anything they see that they feel needs to be addressed. They both do it to all the managers, some more than others. I am really concerned about how they treat our associates. Since we opened last year August 2004 we have already lost 4 managers. Ivan, Brian, Ralph, and myself have been approached several times by our associates on issues because they

The above statement is a true statement to the best of my knowledge and belief. No threats or promises were made by anyone to get me to make this statement. I have had complete freedom to leave the premises.

Signature: Ron Trimble

Witness: _____
Witness: _____
Store #/Location: _____
Date & Time: 2/10/05 10:30 AM
Page 1 of 2

DEF 00181
App. 0137

# Statement

My name is __Ron Trimble__, I live at _____, _____. I make this statement of my own free will. It is my statement and no one else's.

feel they cannot approached Keely or Paula. They feel Paula is good friends with Keely and are afraid to talk to her. With what happened this pass Saturday on Keely terminating 2 associates, Brian and Ralph were very upset about how it was handled along with myself.

There are many days I don't want to come to work. I know this is truely not the way to treat our associates. Before an associate is terminated, you need to have the facts before you do something.

Walmart is a great company to work for. I know this is not the Walmart culture on mistreating our associates. Thank you for your time on this matter.

The above statement is a true statement to the best of my knowledge and belief. No threats or promises were made by anyone to get me to make this statement. I have had complete freedom to leave the premises.

Signature

Witness

Witness

Store #/Location      Page 2 of 2      Date & Time 2/10/05 10:30 AM

DEF 00182

App. 0138