IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

KEELY DAVIS,                          §
                                      §
              Plaintiff,              §
                                      §
v.                                    §       Civil Action No. 3:05-CV-1805-L
                                      §
WAL-MART STORES, INC.,                §
                                      §
              Defendant.              §

## MEMORANDUM OPINION AND ORDER

Before the court is Defendant's Motion for Summary Judgment, filed August 4, 2006. After careful consideration of the motion, response, reply, summary judgment evidence,[1] record and applicable law, the court **grants** Defendant's Motion for Summary Judgment.

## I.    Factual and Procedural Background

This is an employment discrimination case. Plaintiff Keely Davis ("Plaintiff" or "Davis") filed suit against her employer, Wal-Mart Stores, Inc. ("Defendant" or "Wal-Mart"), in state district court in Dallas County on August 5, 2005. Davis's Original Petition alleges causes of action for hostile work environment sex discrimination and retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* ("Title VII") and the Texas Commission on Human Rights Act, Tex. Lab. Code Ann. § 21.001 *et seq.* ("TCHRA"). Davis alleges she was the victim of, and witnessed, sexual harassment by managers at Wal-Mart's store in Rockwall, Texas, and complained

---

[1]The court notes that the only evidence submitted by Davis in response to Wal-Mart's motion for summary judgment is her own affidavit. See Appendix Accompanying Plaintiff's Response to Defendant's Motion for Summary Judgment; otherwise, Davis relies on the documents submitted by Wal-Mart in its appendix.

to management.  Davis alleges that she was transferred to another store and demoted in retaliation for making the sexual harassment complaint.

Wal-Mart removed the case to this court on September 9, 2005, and has filed a motion for summary judgment.  Arguing that it is entitled to summary judgment on Davis's sex discrimination claim, Wal-Mart contends that: (i) Davis cannot establish a *prima facie* case of sex discrimination; (ii) Wal-Mart cannot be held liable because it exercised reasonable care to prevent and correct sexual harassment; and (iii) Davis unreasonably failed to take advantage of Wal-Mart's policy.  In support of its motion for summary judgment on Davis's retaliation claim, Wal-Mart argues that: (i) Davis's retaliation claims are barred by her failure to exhaust administrative remedies; (ii) she cannot establish a *prima facie* case of retaliation; and (iii) she cannot establish that Wal-Mart's legitimate, nonretaliatory reason for demoting her was a pretext for retaliation.  The court now sets forth the facts upon which it relies to resolve Wal-Mart's summary judgment motion.  In setting forth the facts, the court applies the summary judgment standard as set forth in the following section.

Davis began working for Wal-Mart in October 1996 as a cashier at Wal-Mart Store 1055 in Garland, Texas.  Within a year she was promoted to customer service manager and department manager.  In 1999, Davis was promoted to support manager.  She transferred to Wal-Mart Store 789 in Mesquite, Texas (the "Mesquite Store") in July 2000.  She transferred to Wal-Mart Store 259 in Rockwall, Texas (the "Rockwall Store") in December 2000, and in 2001 she was promoted to assistant manager.  Davis worked as an assistant manager in the Rockwall Store until 2003.  Davis worked briefly in the Mesquite Store before being transferred to Wal-Mart Store 3224 in Garland, Texas (the "Garland Store") and promoted to co-manager in 2003.  She worked as a co-manager in

the Garland Store for approximately five months, and was then transferred back to the Rockwall Store in January 2004.

In early May 2004, a Wal-Mart department manager and assistant manager reported to management that Davis had directed associates to inventory three missing computers rather than report them to shrinkage. Wal-Mart district manager Alan Schamber ("Schamber") and district loss prevention supervisor Gregory Mitchell conducted an investigation. They interviewed Davis, two hourly associates, and two members of management, and concluded that the accusation against Davis was true. Schamber conferred with regional personnel manager Sam Sanchez ('Sanchez"), and they decided to give Davis a "Decision-Making Day" coaching and demote her from co-manager to assistant manager. A Decision-Making Day is a paid day off where the employee is to decide whether she will make the required improvement. Wal-Mart has four levels of disciplinary action, referred to as "coaching for improvement": (1) Verbal Coaching; (2) Written Coaching; (3) Decision-Making Day; and (4) Termination. Def. App. 121-125. On May 4, 2004, Davis received a Decision-Making Day coaching for improvement. *Id.* at 92-93. The Decision-Making Day coaching is active for a year. Schamber informed Davis that any further misconduct over the next year could result in her termination. At the time of this Decision-Making Day, Davis had not yet complained of sexual harassment or filed an charge of discrimination with the Equal Employment Opportunity Commission ("EEOC").

Wal-Mart had in place an "open door" policy, which provided that an employee could go to any member of management regarding any concern, grievance or complaint. On or around May 5, 2004, Davis invoked Wal-Mart's "open door" policy and contacted regional vice-president John Murphy ("Murphy") to protest her demotion. Murphy told her to put her version of the facts in

writing.  Davis submitted to Murphy a handwritten statement about the events that led to her disciplinary action.  In the statement, she denied that she ever told an associate to do anything dishonest regarding the inventory, and stated that the disciplinary action was the result of a dishonest department manager and a disgruntled assistant manager.  In the last paragraph of the statement, Davis asserted:

> [I have] seen a lot as an assistant manager concerning salaried [management] and hourly's and [I have] endured the dirty jokes and snide remarks where nothing was done [ ] was deemed acceptable as long as it was kept "in house."  I feel the allegations against me were taken lightly to the extent that no one looked at the accusers or why they would do what they did.  Some may feel that being demoted is not serious but I worked hard and gave up a lot to achieve my goal of being a co-manager.  And I take pride in that.

Def. App.  98-99.  Murphy called Davis and told her that he was leaving her as co-manager so she would not be demoted, but the Decision-Making Day would stand, and she would be transferred to the Wal-Mart store in Wylie, Texas.  Murphy did not interpret anything in Davis's statement as a complaint of sexual harassment.  Murphy did not provide Davis's statement to or discuss the specific contents of the statement with anyone, including regional personnel manager Sanchez.  Davis explained that she did not complain about the sexual harassment at the time because she wanted to be promoted and did not want to be moved from store to store and prove herself again.  She assumed that if she made any trouble, it would affect her ability to be promoted.

In February 2005, during the year after her Decision-Making Day coaching, Davis was again accused of misconduct by an assistant manager.  Store manager Paula Stover had directed Davis to terminate three associates.  One associate named Maria Gonzales spoke little English.  Davis told Gonzales that she was being terminated for purchasing slippers on clearance in violation of Wal-Mart policy.  Gonzales began to cry and said she did not understand.  Ultimately, Davis did not

complete the termination.  The assistant manager who witnessed these events, Ron Trimble, reported that Davis had refused Gonzales's request for a Spanish-speaking interpreter.  Gonzales stated the same thing.  Davis denied that Gonzales had requested an interpreter.  Sanchez and district loss prevention supervisor Glen Lockett ("Lockett") conducted an investigation into the allegations, and obtained written statements.  Sanchez and Lockett determined that the allegations appeared to be true.  Davis was aware as a Wal-Mart manager that if an associate who does not speak English well asks for an interpreter, she is required to get one.

Sanchez decided that Davis would be demoted from co-manager to assistant manager and transferred from the Wylie store to Dallas Store 2996, where she is currently employed.  It is Wal-Mart company policy to transfer a manager to another store after she is demoted.  Davis did not lose any pay or benefits as a result of this demotion.  Wal-Mart could have terminated Davis instead of demoting her, since this second incident occurred within a year of the previous Decision-Making Day in May 2004.

On February 28, 2005, Davis filed a Charge of Discrimination with the Civil Rights Division of the Texas Workforce Commission and the EEOC.  Davis's discrimination statement explained, "I believe that I have been discriminated against because of my sex, Female in violation of Title VII of the Civil Rights Act of 1964, as amended."  Davis checked only the box for discrimination based on sex.  Def. App. at 107.

Davis filed a written complaint about sexual harassment with Wal-Mart on April 21, 2005.  Def. App. 100-106.  The pre-printed complaint form had this question on page 1, "Is this the first time you have told a manager or an hourly supervisor about the incidents you will describe in this statement?"  *Id.* at 100.  In response, Davis circled the word "Yes" and initialed it.  *Id.*  In her April

21, 2005 written complaint, Davis alleged that in 2003 and 2004, she was the object of, and witnessed, sexual harassment from managers at Rockwall Store 259.  Specifically, Davis asserted:

- There were incidents of inappropriate conduct between managers and hourly associates and comments of a sexual nature about females or directed toward Davis.

- Davis saw a videotape of manager Adam Toler and hourly associate Nicole Hubert entering the manager's office, and ten minutes later Hubert came out fixing her shirt and buttoning her jeans.  Davis asked whether Hubert had gotten in trouble, and Hubert replied that she and Toler had sex in the office, and they had done so another time in the ad office.  Hubert told Davis that sometimes she and co-manager Jason Perry had sex, and Davis heard a message on Hubert's cell phone from Perry detailing their night at a motel.

- As a sales associate named Lindsey walked by, manager Nathan Goodner was staring at her.  When Davis asked what he was staring at, Nathan replied, "Lindsey's breasts. I've seen them and had them."  Davis shook her head and walked away.

- Store manager Ronnie Robertson made comments concerning Davis's breast implants.  He asked how they felt, what they looked like, and could he see them. Robertson looked at Davis's chest and said he enjoyed the view.  He made comments about Davis's shirts and sweaters, which ones he liked.

- Davis and Tammy Autry were having a conversation about Autry enlarging her breast implants and Robertson walked up and asked her why she wanted her boobs bigger.  Davis got angry, while Autry got red and said it was none of his business and walked away.

- At times male managers would stand at the checkouts with Robertson and make comments about female customers when Davis and Autry were present.

- During communications meetings dirty jokes were told, Robertson and co-manager John Farrar would talk about their sex lives with their wives.  Farrar described his wife making advances to him and said he got lucky.  Robertson would describe when his wife came home drunk and wanted to have sex but he didn't want to with her drunk.  Robertson's favorite story was about his being in the pool and his wife's friend got into the pool naked but he was uncomfortable because his wife was there. Nathan Goodner would talk about his girlfriend and her body parts.  Donny Peterson would tell stories about parties and that his brother had dated Goodner's girlfriend. At one point Davis told them no one cared about their sex life and wives and parties.

- Robertson, Farrar, Goodner, and Peterson would impersonate a maintenance man who had a tendency to grab himself.  When the maintenance man would call or for

no reasons in general they would grab themselves.  Rarely was anything done alone, it was usually two or more managers.  They fed each other.

*Id.* at 100-106.  Davis also wrote, "You couldn't open door at 259.  Ronnie [Robertson] made it quite clear that what happens in his house stays in his house.  He was very intimidating and no[t] approachable."  *Id.* at 103.  The pre-printed complaint form had the question, "Other than the incidents you described above, did you or anyone else say or do anything else that you or another person considered or might reasonably have considered to be inappropriate or offensive?"  *Id.* at 104.  In response, Davis circled "No" and initialed it.  *Id.*  Davis does not allege that she was sexually harassed at any store other than the Rockwall Store.

At her deposition, in addition to testifying about the allegations already set forth in her April 21, 2005 written complaint (*see id.* at 100-106), Davis recounted two phone calls from Robertson in January 2005 while she was working in the Wylie store before the year-end meetings.  In the first phone call, Robertson asked who was going to the meetings, where they would be staying, and suggested they could get together and have dinner.  Davis did not find this offensive.  In the second phone call, Robertson asked whether Davis and two other managers were driving and what time they would probably get in.  Davis recounted that Robertson said, "[W]e could hook up, and something to the extent of what I would do to him when I was up there."  *Id.* at 16.  She did not ask Robertson what he meant by that.  Davis testified at deposition that she found that conversation offensive, the implication of what she would do to him while she was up there; she had no idea what he meant, and did not want to know.  She said that the statement could be interpreted many different ways, and she assumed it meant that Robertson wanted to sleep with her.  Davis also testified at deposition that the incidents discussed in her written statement and the phone call from Robertson comprise all of her

complaints of sexual harassment.  *Id.* at 34, 58-60.  Plaintiff has presented no evidence that she was ever touched improperly at Wal-Mart.

Davis also had three or four conversations with Wylie Store manager Paula Stover where Davis discussed incidents of inappropriate conduct or sexual harassment by managers at the Rockwall Store.  Davis did not tell Stover that she believed she was being sexually harassed.  She did not ask Stover to take any action.

After regional personnel manager Sanchez learned of Davis's conversations with Stover, he contacted Davis to discuss her allegations.  Sanchez instructed district manager Aaron Carter to conduct a "red book" investigation into Davis's allegations.  As a result, Ronnie Robertson, John Farrar, and two others were terminated for gross misconduct.

Davis acknowledged at her deposition that at the time she was being sexually harassed, she was an assistant manager and she was aware of Wal-Mart's "open door" policy that an employee should go to any member of management regarding any concern, grievance or complaint.  There is no chain of command that the employee must follow.  Davis acknowledged that she was also aware of Wal-Mart's inappropriate conduct and sexual harassment policy. Davis acknowledged that Wal-Mart emphasizes through its "open door" policy and the sexual harassment or inappropriate conduct policy that there can be no retaliation for anyone utilizing those policies.  Davis testified that she did not complain about the sexual harassment at the time because she wanted to be promoted and did not want to be moved from store to store and prove herself again.  She assumed that if she made any trouble, that would affect her ability to be promoted.

II.    **Summary Judgment Standard**

Summary judgment shall be rendered when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986); *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998).  A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  When ruling on a motion for summary judgment, the court is required to view all inferences drawn from the factual record in the light most favorable to the nonmoving party.  *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986); *Ragas*, 136 F.3d at 458.  Further, a court "may not make credibility determinations or weigh the evidence" in ruling on motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Anderson*, 477 U.S. at 254-55.

Once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine fact issue.  *Matsushita*, 475 U.S. at 586.  Mere conclusory allegations are not competent summary judgment evidence, and thus are insufficient to defeat a motion for summary judgment.  *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996). Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence.  *See Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir.), *cert. denied*, 513 U.S. 871 (1994).  The party opposing summary judgment is required to identify specific evidence

in the record and to articulate the precise manner in which that evidence supports his claim. *Ragas*, 136 F.3d at 458. Rule 56 does not impose a duty on the court to "sift through the record in search of evidence" to support the nonmovant's opposition to the motion for summary judgment. *Id.*; *see also Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915-16 & n.7 (5th Cir.), *cert. denied*, 506 U.S. 832 (1992). "Only disputes over facts that might affect the outcome of the suit under the governing laws will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248. Disputed fact issues which are "irrelevant and unnecessary" will not be considered by a court in ruling on a summary judgment motion. *Id.* If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case and on which it will bear the burden of proof at trial, summary judgment must be granted. *Celotex*, 477 U.S. at 322-23.

## III.    Analysis

Davis has asserted claims for sex discrimination based on hostile work environment and retaliation by means of a demotion and transfer in violation of Title VII and the TCHRA. After setting forth the legal standard for Davis's Title VII and TCHRA claims, the court will address her sex discrimination claims, followed by her retaliation claims.

### A.    Legal Standard for Davis's Title VII and TCHRA Claims

Title VII of the Civil Right Act of 1964 provides, in relevant part, that "[i]t shall be an unlawful employment practice for an employer . . . to discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1).[2] As the United

---

[2]The TCHRA "is modeled after federal civil rights law." *NME Hosps., Inc. v. Rennels*, 994 S.W.2d 142, 144 (Tex. 1999). An express purpose of the TCHRA is to "provide for the execution of the policies of Title VII of the Civil Rights Act of 1964 and its subsequent amendments." *Id.* (quoting Tex. Lab. Code § 21.001(1)). The TCHRA "purports to correlate 'state law with federal law in the area of discrimination in employment.'" *Id.* The evidentiary framework

States Supreme Court has recognized, "[t]he phrase 'terms, conditions, or privileges of employment' evinces a congressional intent to strike at the entire spectrum of disparate treatment of men and women in employment." *Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57, 64 (1986) (internal quotations and citation omitted). An employer violates Title VII when the employer allows the workplace to be "permeated with discriminatory intimidation, ridicule, and insult . . . that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment[.]*" Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (internal quotations and citations omitted). The Court in *Harris* further noted that "[t]his standard . . . takes a middle path between making actionable any conduct that is merely offensive and requiring the conduct to cause a tangible psychological injury." *Id.*

To survive a motion for summary judgment, a Title VII plaintiff must first establish a *prima facie* case of discrimination by a preponderance of the evidence. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973); *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 252-53 (1981). Once this *prima facie* case has been established, there is a presumption of discrimination, and the burden shifts to the defendant to articulate some legitimate, non-discriminatory reason for the challenged employment action. *McDonnell Douglas,* 411 U.S. at 802-04. If such a showing is made, the burden shifts back to the plaintiff to demonstrate that the articulated reason was merely a pretext for intentional discrimination.[3] *Id.*

---

for stating a claim under the TCHRA is the same as that employed under Title VII. *Farrington v. Sysco Food Servs., Inc.*, 865 S.W.2d 247, 251 (Tex.App.–Houston [1st Dist.] 1993, writ denied); *Martin v. Kroger Co.*, 65 F. Supp.2d 516, 530 (S.D. Tex. 1999). This court therefore applies the same analysis on the TCHRA claims as the Title VII claims.

[3] Neither party argues that this is a "mixed motive," as opposed to a "pretext" case. Accordingly, the court determines that neither the Supreme Court's decision in *Desert Palace, Inc. v. Costa*, 539 U.S. 90 (2003), nor the Fifth Circuit's decision in *Rachid v. Jack in the Box, Inc.*, 376 F.3d 305 (5th Cir. 2004), affects the court's ruling in this case.

**Memorandum Opinion and Order - Page 11**

After a Title VII case reaches the pretext stage, the question for summary judgment is whether a rational factfinder could find that the employer intentionally discriminated against the plaintiff on the basis of race, color, religion, sex or national origin. *See St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 511 (1993). A "plaintiff can survive summary judgment by producing evidence that creates a jury issue as to the employer's discriminatory animus or the falsity of the employer's legitimate nondiscriminatory explanation." *Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 897 (5th Cir. 2002). "Pretext-plus" is not required to support an inference of retaliatory discrimination. *Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 223 (5th Cir. 2000). "[A] plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated," and may therefore be enough to prevent summary judgment or judgment as a matter of law. *See Reeves v. Sanderson Plumbing Prods. Inc.*, 530 U.S. 133, 148 (2000); *Sandstad*, 309 F.3d at 897. This showing, however, is not always enough to prevent summary judgment "if the record conclusively revealed some other, nondiscriminatory reason for the employer's decision, or if the plaintiff created only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination had occurred." *Reeves*, 530 U.S. at 148.

### B.      Sex Discrimination (Hostile Work Environment)

Wal-Mart has moved for summary judgment on Plaintiff's "hostile work environment" gender discrimination claims. In support, Walmart contends that its summary judgment motion on Plaintiff's sex discrimination claims should be granted since: (i) Davis cannot establish a *prima facie* case of sex discrimination; (ii) Wal-Mart cannot be held liable because it exercised reasonable care

**Memorandum Opinion and Order - Page 12**

to prevent and correct sexual harassment; and (iii) Davis unreasonably failed to take advantage of Wal-Mart's policy.   In response, Plaintiff argues that she has established her *prima facie* case, and Wal-Mart's summary judgment motion should be denied.

### 1.    Legal Standard

Plaintiff may prove her sexual harassment claim either by establishing that a tangible employment action was taken against her because of her sex or by establishing that a supervisor with immediate or successively higher authority discriminated against her because of her sex and created a hostile or abusive environment. *See Faragher v. City of Boca Raton*, 524 U.S. 775, 786-87 (1998); *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 751 (1998); *Wyatt v. Hunt Plywood Co., Inc.*, 297 F.3d 405, 409 (5th Cir. 2002)*; Casiano v. AT&T Corp.*, 213 F.3d 278, 283-84 (5th Cir. 2000); *Butler v. Ysleta Indep. Sch. Dist.*, 161 F.3d 263, 268-69 (5th Cir. 1998).  Davis alleges sexual harassment based on hostile work environment.[4]

To establish a sexual harassment claim based on hostile work environment, the employee must show (1) that she belongs to a protected class; (2) that she was subject to unwelcome sexual harassment; (3) that the harassment was based on sex; (4) that the harassment affected a "term, condition, or privilege" of employment; and (5) that the employer knew or should have known of the harassment and failed to take prompt remedial action.  *Watts v. Kroger Co.*, 170 F.3d 505, 509 (5th Cir. 1999); *Pfeil v. Intercom Telecomm.*, 90 F.Supp.2d 742, 748 (N.D. Tex. 2000).  In *Faragher* and *Ellerth*, the Supreme Court modified this test with respect to cases where the alleged harasser is a supervisor with immediate or higher authority over the harassed employee.  *Watts*, 170 F.3d at

---

[4]The court notes that at times in her Response, Plaintiff refers to Wal-Mart's alleged failure to promote her as a "tangible employment action."  This does not alter the court's analysis, as her newly raised  failure to promote claim is tied only to her retaliation claim and discussed more fully below.  *See infra* note 6.

**Memorandum Opinion and Order - Page 13**

509; *Pfeil*, 90 F.Supp.2d at 748.  In such cases, the employee need only meet the first four elements of the test.

A "term, condition, or privilege" of employment is affected when the harassing conduct is severe or pervasive enough to create an objectively hostile or abusive working environment. *Shepherd v. Comptroller of Public Accounts*, 168 F.3d 871, 874 (5th Cir. 1999); *Pfeil*, 90 F.Supp.2d at 749.  If the conduct at issue was not severe or pervasive, the employer cannot be held vicariously liable for the supervisor's actions.  *Wyatt*, 297 F.3d at 409.   If, however, the conduct was severe or pervasive, the employer may avail itself of the *Ellerth/Faragher* affirmative defense in an attempt to avoid liability.  *Wyatt*, 297 F.3d at 409; *Pfeil*, 90 F.Supp.2d at 749.  This defense is comprised of two elements, both of which an employer must establish to avoid liability under Title VII: (1) the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior; and (2) the plaintiff employee unreasonably failed to take advantage of any available preventive or corrective opportunities.  *Ellerth*, 524 U.S. at 765; *Wyatt*, 297 F.3d at 409.

Courts determine whether an environment is sufficiently abusive to be actionable under Title VII by reviewing all of the relevant circumstances, including the frequency of the conduct, its severity, whether it is physically threatening or humiliating, or a mere offensive utterance, and whether it unreasonably interferes with the employee's work performance.  *Butler*, 161 F.3d at 269 (citing *Faragher*, 524 U.S. at 787-88).  Incidental or occasional sexual comments, discourtesy, rudeness, or isolated incidents (unless extremely serious) are not discriminatory changes in the terms and conditions of a worker's employment.  *Id*.

Even when a hostile environment is shown, the plaintiff must establish that the workplace environment had the effect of altering the terms and conditions of her employment.  *Harris v.*

**Memorandum Opinion and Order - Page 14**

*Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993); *Nash v. Electrospace Sys., Inc.*, 9 F.3d 401, 403 (5th Cir. 1993).  Central to the court's inquiry into a hostile environment claim is whether the alleged harasser's actions have undermined the victim's workplace competence, discouraged her from remaining on the job, or kept her from advancing in her career.  *Harris*, 510 U.S. at 22; *Shepherd*, 168 F.3d at 874.  Title VII is intended only to prohibit and prevent conduct "that is so severe [or] pervasive that it destroys a protected class member's opportunity to succeed in the workplace." *Shepherd*, 168 F.3d at 874.  Title VII's overall goal of equality is not served if a claim can be maintained solely based on conduct that wounds or offends, but does not hinder an employee's performance.  *Weller v. Citation Oil & Gas Corp.*, 84 F.3d 191, 194 (5th Cir. 1996).

To be actionable, the challenged conduct must be objectively offensive, meaning that a reasonable person would find the conduct hostile or abusive, and subjectively offensive, meaning that the victim perceived the conduct to be hostile or abusive.  *See Harris*, 510 U.S. at 21-22.

### 2.    Discussion

Wal-Mart argues that it is entitled to summary judgment since the harassing conduct and comments of which Plaintiff complains, even assuming they are true, were not sufficiently severe or pervasive to create a hostile work environment as a matter of law.  *See* Def. Brief at 15-19.  In response, Davis does not identify any disputed factual issues, but states that "the totality of the circumstances raise at least a fact question whether the conduct she experiences was severe or pervasive."  Pl. Brief ¶ 23.

The evidence, viewed in the light most favorable to Plaintiff, shows that male managers at the Rockwall store made comments to her (and comments to other employees in her presence not directed at her) that she found offensive.  Specifically, at her deposition she testified that of all the

workplace comments and conduct, including all the conduct and comments set forth in her written complaint about sexual harassment with Wal-Mart dated April 21, 2005 (*see* Def. App. 100-106), the following were personally offensive to her: comments by Robertson asking her about her breast implants on two or three occasions (including asking how they felt, what they looked like, and could he see them); Robertson looking at her breasts and saying he enjoyed the view on approximately three occasions; Robertson telling her that she looked nice in tight sweaters between four and eight times; and Robertson asking her what she was going to do to him at the year-end meeting in January 2005. *See id.* at 61-63.

Having reviewed all of the relevant circumstances, including the frequency of the conduct, its severity, whether the conduct was physically threatening or humiliating, or a mere offensive utterance, and whether the conduct unreasonably interfered with the employee's work performance (see *Butler*, 161 F.3d at 269 (citing *Faragher*, 524 U.S. at 787-88)), the court determines that under the applicable law, Davis has failed to raise a genuine issue of material fact that the alleged sexual harassment of which she complains was "sufficiently severe or pervasive to alter the conditions of the [her] employment and create an abusive working environment[.]" *See Harris,* 510 U.S. at 21 (internal quotations and citations omitted).  Otherwise stated, given the evidence, no reasonable juror could conclude that the instances of sexually harassing conduct of which Plaintiff complains were severe or pervasive enough to create an objectively hostile or abusive working environment. *See Shepherd*, 168 F.3d at 874; *Pfeil*, 90 F.Supp.2d at 749.  As reiterated by the Supreme Court in *Oncale* with reference to what constitutes illegal discrimination under Title VII:

> And there is another requirement that prevents Title VII from
> expanding into a general civility code: As we emphasized in *Meritor*
> and *Harris*, the statute does not reach genuine but innocuous
> differences in the ways men and women routinely interact with

> members of the same sex and of the opposite sex.  The prohibition of
> harassment on the basis of sex requires neither asexuality nor
> androgyny in the workplace; it forbids only behavior so objectively
> offensive as to alter the "conditions" of the victim's employment.
> "Conduct that is not severe or pervasive enough to create an
> objectively hostile or abusive work environment . . . is beyond Title
> VII's purview." . . . We have always regarded that requirement as
> crucial, and as sufficient to ensure that courts and juries do not
> mistake ordinary socializing in the workplace – such as male-on-male
> horseplay . . . for discriminatory "conditions of employment."

*Oncale*, 523 U.S. at 81 (citations omitted).  *See also Shepherd*, 168 F.3d at 874 (Where plaintiff's supervisor made a number of sexually offensive comments over the years involving plaintiff's nipples and thighs, as well as physical contact with the plaintiff's arms and shoulders, the Fifth Circuit concluded that "based upon a consideration of all the circumstances, [the harasser's] conduct did not render [the plaintiff's] work environment objectively "hostile" or "abusive.").

Further, in determining whether an environment is sufficiently abusive to be actionable under Title VII, one of the factors courts consider is whether the alleged offensive conduct unreasonably interfered with the employee's work performance.  *See Butler*, 161 F.3d at 269 (citing *Faragher*, 524 U.S. at 787-88).  In this case, Plaintiff has failed to submit evidence that the alleged conduct unreasonably interfered with her work performance.  As Wal-Mart correctly points out, the evidence shows that during the time period at issue, Davis received consistently positive performance evaluations and was promoted with a pay increase.  Def. App. at 6, 65; Pl. Pet. ¶ 5.

In short, the court determines that Wal-Mart is entitled to summary judgment on Davis's sexual harassment claims since she has failed to create a genuine issue of material fact that the instances of sexual harassment of which she complains (however boorish, immature, and coarse)

**Memorandum Opinion and Order - Page 17**

were "sufficiently severe or pervasive to alter the conditions of [her] employment and create an abusive working environment[.]" *Harris*, 510 U.S. 17, 21 (1993).[5]

### C.     Retaliation

Wal-Mart contends that its summary judgment motion on Plaintiff's retaliation claims should be granted since: (i) her retaliation claims are barred by her failure to exhaust administrative remedies; (ii) she cannot establish a *prima facie* case of retaliation; and (iii) she cannot establish that Wal-Mart's legitimate, nonretaliatory reason for demoting her was a pretext for retaliation.

### 1.     Exhaustion of Administrative Remedies

A condition precedent to bringing suit on an employment discrimination charge under Title VII is the timely filing and exhaustion of an EEOC charge. *See* 42 U.S.C. § 2000e-5(e)(1); *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378-79 (5th Cir. 2002). A Title VII suit may extend as far as, but not farther than, the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination. *Fine v. GAF Chem. Corp.*, 995 F.2d 576, 578 (5th Cir. 1993). One of the central purposes of the employment discrimination charge is to put employers on notice of "the existence and nature of the charges against them." *Manning v. Chevron Chem. Co. LLC*, 332 F.3d 874, 878 (5th Cir. 2003), *cert. denied*, 540 U.S. 1107 (2004) (*quoting EEOC v. Shell Oil Co.*, 466 U.S. 54, 77 (1984)).

---

[5]Alternatively, the court determines that even if Plaintiff had established her *prima facie* case (which she has not), Wal-Mart is entitled to summary judgment based on the *Ellerth/Faragher* affirmative defense pleaded in its answer and established by competent summary judgment evidence. Specifically, Wal-Mart has presented evidence that it exercised reasonable care to prevent and correct the alleged sexual harassment and that Davis unreasonably failed to take advantage of Wal-Mart's policy. *See supra* at 8. The court rejects Plaintiff's argument that the *Ellerth/Faragher* affirmative defense is not available to Wal-Mart since she is complaining of Wal-Mart's failure to promote her, a "tangible employment action." *See* Resp. at 4. First, as set forth more fully below (*see infra*, note 6), the court will not consider Plaintiff's newly-raised claim (raised for the first time in her response) that she is claiming discrimination for Wal-Mart's failure to promote her. Second, her newly-raised "failure to promote" claim is tied to her retaliation claim, and not to her sexual harassment claim.

**Memorandum Opinion and Order - Page 18**

On February 28, 2006, Davis filed her Charge of Discrimination with the Civil Rights Division of the Texas Workforce Commission and the EEOC. Def. App. 107. Davis's statement of personal harm explained:

> On February 25, 2005 I was informed by Trent Crow, District Manager that I was being demoted from my position of Co-Manager at store #5210 in Wylie, Texas and that I was being transferred to store #2996 in Dallas, Texas and was to report on March 2, 2005 to my new position that of Assistant Manager.

Davis's discrimination statement explained, "I believe that I have been discriminated against because of my sex, Female in violation of Title VII of the Civil Rights Act of 1964, as amended." Davis checked only the box for discrimination based on sex.

> Davis's charge questionnaire contains the following statement:

> I was sexually harassed by Ronnie Robertson, and male managers from Jan 2004 - May 2004. Recently in Jan received phone call from store manager asking what I was going to do to him at year end meetings. While in store comments on my breasts (had enlargements) wanted to feel them – constant comments on shirts I was wearing. Since have transfered. Was repeatedly reminded of my old district by current D.M. Trent Crow. Demoted me on 2-25-05 for following store mgrs direction to terminate 3 associates for heavy handed mgmt. Requested verbally & in writing to remain in store due to being close to home because of sons health. Two male asst mgrs are being allowed to move closer to home. No policy or procedure stating I cant stay in store.

(All spelling and abbreviations in original). Def. App. at 98-99. In response to Wal-Mart's motion for summary judgment, Davis argues that the statement in her charge questionnaire "Was repeatedly reminded of my old district by current D.M. Trent Crow" and the reference to her demotion is sufficient for her retaliation claim to reasonably grow out of her administrative charge, so that she has exhausted her administrative remedies.

The court does not consider dispositive that Davis checked only the box for discrimination based on sex, and did not check the box for retaliation. *See Pacheco v. Mineta*, 448 F.3d 783, 792

**Memorandum Opinion and Order - Page 19**

(5th Cir. 2006) ("To be clear, we do not require that a Title-VII plaintiff check a certain box or recite a specific incantation to exhaust his or her administrative remedies before the proper agency."). The substance of an EEOC charge, not its form, is the key characteristic for analysis. In this case, Davis's charge is devoid of any explicit or implicit reference to retaliation, and includes no facts or allegations whatsoever to put the EEOC or Wal-Mart on notice that retaliation is part of her complaint. Liberally construed, the court concludes that the reference in the charge questionnaire that Davis "Was repeatedly reminded of my old district by current D.M. Trent Crow" and "Demoted me on 2-25-05 for following store mgrs direction to terminate 3 associates for heavy handed mgmt" likewise fails to sufficiently exhaust her administrative remedies for a retaliation claim. *See, e.g., Wooten v. Federal Express Corp.*, 2007 WL 63609, *5 (N.D. Tex. Jan. 9, 2007) (Fitzwater, J.) (Plaintiff did not exhaust administrative remedies for retaliation where her charge complained only of discrimination based on her termination; she did not check the retaliation box on the charge, or complain of retaliation in her EEOC charge.); *Perez v. MCI World Com Communications*, 154 F. Supp.2d 932, 937-38 (N.D. Tex. 2001) (Buchmeyer, J.) (Plaintiff did not exhaust administrative remedies for retaliation in her charge of sex discrimination; she did not check the retaliation box on the charge or include any statements regarding retaliation.); *Blanchet v. Chevron/Texaco Corp.*, 368 F. Supp.2d 589, 603 (E.D. Tex. 2004) (same).

Further, because Plaintiff complains of discriminatory acts that *preceded* the filing of her EEOC charge, she does not fall within the exception that applies when a person complains of retaliation for filing the EEOC charge itself. *See Wooten*, 2007 WL 63609 at *5 (Where plaintiff complained about retaliation that occurred prior to filing her charge, she did not fall into exception that applies when a person complains of retaliation for filing the EEOC charge itself.); *Hayes v.*

*MBNA Tech., Inc.*, 2004 WL 1283965, at *9 (N.D. Tex. June 9, 2004) (Fitzwater, J.) (same).[6]

Because Plaintiff failed to exhaust her administrative remedies as to her retaliation claim, Wal-Mart's motion for summary judgment should be granted as to this claim. Accordingly, Plaintiff's retaliation claim should be dismissed without prejudice for failure to exhaust administrative remedies.

Alternatively, even assuming that Davis had exhausted her administrative remedies (which she has not), the court determines that she has failed to create a genuine issue of material fact that Wal-Mart's articulated nonretaliatory reason for demoting her was a pretext for retaliation. As Wal-Mart points out (*see* Def. Reply at 8), Plaintiff, in her response to its motion for summary judgment, makes no effort to rebut Wal-Mart's argument that it had a legitimate nonretaliatory reason for demoting her, thereby conceding the issue. *See generally Scales v. Slater*, 181 F.3d 703, 709 n.5

---

[6]This exception is embodied in *Gupta v. East Texas State Univ.*, 654 F.2d 411, 413-14 (5th Cir. 1981). In *Gupta*, the plaintiff filed an EEOC charge alleging national origin and religious discrimination. *Id.* at 413. He later sued for the alleged discrimination, and in that lawsuit he also claimed that after he filed the EEOC charge, his employer retaliated against him; however, the plaintiff had not filed an additional EEOC charge alleging retaliation. *Id.* The Fifth Circuit held that it was not necessary to file a charge for a retaliation claim when that claim grows out of a previously filed EEOC charge. *Id.* at 414. The situation in *Gupta* is distinguishable from this case because Davis's retaliation claim does not grow out of a previously filed EEOC charge. The alleged retaliation about which she complains occurred before she ever went to the EEOC. Thus, the *Gupta* rule does not apply. Further, the court rejects Plaintiff's attempt to assert post-EEOC charge retaliation claims for the first time in her response to Wal-Mart's motion for summary judgment. In her response to Wal-Mart's motion, Davis submits an affidavit in which she asserts an additional post-EEOC charge retaliation claim. Davis asserts that she has applied seven or eight times to be promoted to co-manager and work at a different store since her last coaching expired in February 2006. Each time she has been turned down, usually without any interviews, even though her most recent performance evaluation was 4.0. She was given a phone interview on May 5, 2006 by the store manager in the McKinney store, and was told that she was one of the three candidates being submitted to regional manager John Murphy for the position. She received a letter the next day turning her down for the position. Davis considers this to be continuing retaliation for having filed an EEOC charge and this lawsuit, and asserts that she can bring an unexhausted retaliation claim where it is based on filing an EEOC charge. The court rejects this argument. First, an employer's failure to promote an employee is a discrete event that cannot constitute a continuing violation. *See Nat's R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2003); *Wooten*, 2007 WL 63609 at *5. Accordingly, she has failed to exhaust her administrative remedies as to a failure to promote claim. Second, in her Petition, Plaintiff's allegations of retaliation are limited to her February 2005 demotion and transfer, which she alleges resulted from her making an internal complaint of sexual harassment. There is no allegation that Wal-Mart failed to promote her in retaliation for filing an EEOC charge or this lawsuit. Davis has never sought leave to amend her complaint to add a failure-to-promote retaliation claim. The court rejects Davis's attempt to assert claims in response to summary judgment not asserted in her Petition.

**Memorandum Opinion and Order - Page 21**

(5th Cir. 1999) (where Title VII plaintiff failed to contest a defendant's arguments for dismissal of her disparate impact claim, plaintiff deemed to have abandoned claim).  Instead, in her responsive brief, Davis once again attempts to rely on a new theory of liability, namely, that Wal-Mart's failure to promote her establishes a pretext for retaliation.  For the reasons previously stated (*see supra*, note. 6), this belated attempt to assert a new theory she never previously raised will not be countenanced by the court.  Because Davis has failed to create a genuine issue of material fact that Wal-Mart's articulated nondiscriminatory reason for demoting her was a pretext for retaliation, Wal-Mart's motion for summary judgment should be granted as to her retaliation claim on this basis as well.

## IV.    Conclusion

For the reasons discussed herein, the court concludes that no genuine issues of material fact exist regarding Davis's sex discrimination and retaliation claims, and Wal-Mart is entitled to judgment as a matter of law.  Accordingly, the court **grants** Defendant's Motion for Summary Judgment and **dismisses with prejudice** Plaintiff's sex discrimination claims and retaliation claims.

**It is so ordered** this 19th day of March, 2007.

Sam A. Lindsay
United States District Judge